Lester **BRICKMAN**, Plaintiff,

v.

**TYCO TOYS, INC., Samuel Ofrichter, Richard E. Grey, John A. Selzer, Ariel Gratch, Jerome I. Gellman, Joel M. Handel, Savoy Industries, Inc., Benson A. Selzer, Geoffrey T. Selzer, the Selzer Group, L.P., and Harry J. Pearce, Defendants.**

No. 88 Civ. 3936 (RLC).

United States District Court, S.D. New York.

Oct. 4, 1989.

Goodkind, Labaton & Rudoff, New York City, for plaintiff; Edward Labaton, Joseph V. Sternberg and Richard Paley, of counsel.

Curtis, Mallet–Prevost, Colt & Mosle, New York City, for defendant Tyco Toys, Inc.; Joseph D. Pizzurro, of counsel.

Baer Marks & Upham, New York City, for defendants Samuel Ofrichter, John A. Selzer, Ariel Gratch, Jerome I. Gellman, Joel M. Handel, Benson A. Selzer, Geoffrey

T. Selzer and The Selzer Group, L.P.; Alan D. Dinkoff, of counsel.

Blodnick & Pomeranz, Lake Success, N.Y., for defendants Richard E. Grey and Harry J. Pearce; Mark M. Rottenberg and Frederick Newman, of counsel.

Olwine, Connelly, Chase, O'Donnell & Weyher, New York City, for defendant Savoy Industries, Inc.; Charles M. McCaghey, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

*Preliminary Statement*

Plaintiff, a shareholder of Tyco Toys, Inc. ("Tyco"), here joins two distinct actions. The first is a class action alleging securities fraud brought on behalf of purchasers of Tyco stock in which Tyco, among others, is named as a defendant.[1] The second is a derivative action on behalf of Tyco against all the other defendants for breach of fiduciary duty. Both actions are based on the same factual claims involving an alleged scheme of self-dealing. Defendants move for dismissal of all claims on a variety of grounds, seek to preclude plaintiff from acting simultaneously as a class representative and as a shareholder derivative plaintiff and contend that plaintiff's class action claims must be stricken for failure to seek class certification in a timely manner.

Plaintiff alleges that Benson Selzer owns or controls, directly or indirectly, a network of business entities including all three business entities named as defendants in this case, Selzer Group, L.P. ("Selzer Group"), Savoy Industries, Inc. ("Savoy"), and Tyco. He is the sole owner of Selzer Group. He owns approximately 37.5% of Savoy and is either Chairman or Vice Chairman of its board of directors.[2] Prior to February 20, 1986, Tyco was a wholly-owned subsidiary of Mallory Randall Corporation ("Mallory") which was, in turn, a wholly owned subsidiary of Savoy.

By a public offering on February 20, 1986 (the "Public Offering"), Tyco was sold to the investing public, divesting Savoy of its ownership interest. However, Benson Selzer is alleged to have continued his *de facto* control of the firm through his influence over individual Tyco directors. These individuals, also named as defendants, are either relatives of Benson Selzer, occupy remunerative positions in other business entities controlled by him, or are allegedly beholden to him because of business he directs to them. Plaintiff maintains that these defendants have placed Benson Selzer's interests above those of Tyco and its shareholders.

Plaintiff alleges that the Public Offering was part of a scheme to "infuse Tyco with funds raised from the investing public" and then to misappropriate or divert those funds to financially troubled business entities owned or controlled by defendant Benson Selzer. Amended Complaint ¶ 32. Specifically, plaintiff complains of three transactions subsequent to the Public Offering.

First, that defendants engaged in self-dealing in connection with a $2.5 million loan made by Tyco to Savoy on April 27, 1987, and a related transaction involving an agreement by Tyco to purchase 2.16 million shares of Nasta Holdings, L.P., the predecessor of defendant Selzer Group (the "Savoy Loan"). Plaintiff alleges that the Savoy Loan served no legitimate business purpose but was made solely to assist Savoy in obtaining funds which it could lend to its financially troubled subsidiary, Robert Bruce Industries, Inc. ("RBI"). He claims that both Tyco itself and purchasers of Tyco common stock were harmed by Tyco's failure to disclose material facts regarding the Savoy Loan in documents, reports, and statements issued after the loan was made.

---

1. The only other defendant not named in both causes of action is Geoffrey T. Selzer. He is named as a defendant only in the derivative action.

2. In paragraph 8 of plaintiff's amended complaint, Benson Selzer is identified as Vice Chairman of Savoy, but in paragraph 12, he is identified as the firm's Chairman.

Second, that defendants engaged in wrongful self-dealing in connection with a series of agreements whereby a majority owned subsidiary of Tyco ("Nasta") acquired 49% of the common stock of Olympic Mills Corporation ("Olympic") from RBI in April 1988. Pursuant to these agreements, Nasta lent Olympic $1.0 million and purchased $1.5 million of Olympic subordinated debt and preferred stock (the "Nasta Transaction"). Funding for the Nasta Transaction was obtained through a private placement of Nasta convertible subordinated debentures in which several defendants had an interest. Plaintiff claims that the Nasta Transaction served no legitimate business purpose but was engineered by defendants to funnel Tyco resources to other business entities in which they had interests. When certain details of the Savoy Loan and the Nasta Transaction were revealed to the investing public by Tyco in late April and early May 1988, the market price of Tyco common stock fell by almost a third.

Third, that a June 3, 1988 private placement of Tyco senior debentures and warrants to an investor group that included six of the defendants (the "Private Placement") was detrimental to Tyco and improperly favored those who were permitted to purchase securities pursuant to its terms. The transaction was purportedly structured so as to allow the favored purchasers to increase their stake in Tyco at depressed prices engineered by the defendants on terms that were relatively risk free to the purchasers.

Based on these factual allegations, plaintiff alleges three causes of action. The first two are advanced on behalf of plaintiff and a putative class of Tyco shareholders consisting of all persons who purchased Tyco stock between February 20, 1986, the date of the Public Offering, and June 7, 1988, the approximate date of the commencement of this action. Plaintiff's third cause of action is advanced derivatively on behalf of Tyco.

In his first cause of action, plaintiff claims that all of the defendants except Geoffrey T. Selzer violated Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934 (the "1934 Act"), 15 U.S.C. §§ 78j(b), 78t(a), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5, in connection with Tyco's failure to disclose material facts regarding the Savoy Loan.[3] Plaintiff's second cause of action alleges a pendent common law claim against all of the defendants except Geoffrey T. Selzer for negligent misrepresentation in connection with the Savoy Loan.[4] His third cause of action, the derivative claim, charges all of the defendants, including Geoffrey T. Selzer, with breaching their fiduciary duty to Tyco and its public stockholders in connection with the Savoy Loan, the Nasta Transaction, and the Private Placement.

*Parties' Contentions*

Defendants now move for dismissal of plaintiff's first cause of action for failure to plead fraud with sufficient particularity in violation of Rule 9(b), F.R.Civ.P. Defendants cite a number of alleged deficiencies in plaintiff's pleading of his Rule 10b–5 claim. The first is plaintiff's failure to allege the date of his stock purchases. Defendants argue that this omission is fatal to plaintiff's claim, because reliance on particular misstatements must be averred to state a cause of action under the rule.

Defendants next claim that plaintiff has failed to particularize adequately the roles of defendants Selzer Group, Savoy, and Benson Selzer in the alleged fraud. They

---

**3.** Plaintiff's amended complaint does not state that his Rule 10b–5 action is limited to allegations regarding the Savoy Loan, but that is the only transaction specifically referenced in his statement of the cause of action. See ¶¶ 92–93.

**4.** As with his Rule 10b–5 cause of action, plaintiff does not state that his common law claim for negligent misrepresentation is limited to the Savoy Loan. However, that appears to be his intent in referring, in his statement of this cause

of action, to various allegedly misleading "documents, reports, releases and statements as hereinbefore set forth." See Amended Complaint ¶ 102. It appears that the only documents, reports, releases and statements specifically alleged by plaintiff to have been misleading are claimed to have been wrongful only because they withheld important information regarding the Savoy Loan.

assert that the complaint does not successfully link these individuals to any specific misrepresentation or omission described therein.

Defendants move to dismiss plaintiff's common law claim for negligent misrepresentation as to all defendants because the complaint fails to allege contractual privity or some similar relationship between the parties sufficient to create a duty of care. Defendants also move to dismiss plaintiff's derivative claim for failure to make a demand that the board of directors bring this action.

Lastly, defendants move to strike the class allegations of the complaint because plaintiff failed to move for class certification within sixty days after the filing of a pleading asserting a claim for a class, as is required by Local Civil Rule 4(c).

Plaintiff responds that his amended complaint alleges a continuing failure to disclose material facts beginning at the time of the Public Offering. Consequently, he asserts, the allegation in the amended complaint that he purchased Tyco stock after the date of the Offering is sufficient to establish a Rule 10b–5 claim. Alternatively, plaintiff offers to amend his complaint to include the dates of his purchases of Tyco stock.

Plaintiff maintains that a relationship of privity in not a necessary element of a negligent misrepresentation cause of action, and alternatively, that one existed between the parties.

As to plaintiff's derivative action, he concedes that no demand was made on the board of directors but argues that such a demand would have been futile and is therefore excused. Plaintiff also concedes the untimeliness of his motion for class certification, but asserts that the court should exercise its discretion to deny defendants' motion.

*Discussion*

■ Defendants are correct that reliance is an element of a Rule 10b–5 cause of action. *Basic, Inc. v. Levinson,* 485 U.S. 224, 108 S.Ct. 978, 989, 99 L.Ed.2d 194 (1988). However, where a failure to disclose rather than a positive misrepresentation is alleged, reliance may be presumed. "All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of [the investment] decision." *Affiliated Ute Citizens of Utah v. United States,* 406 U.S. 128, 153–54, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972). Nevertheless, the logic of this presumption applies only if the securities transaction at issue occurred after the alleged failure to disclose commenced. Consequently, plaintiff's assertion that he purchased Tyco stock on or after the date of the public offering is insufficient.

■ The pleading requirements of Rule 9(b) generally prohibit averments based on information and belief. "[T]he rule is relaxed as to matters peculiarly within the adverse parties' knowledge, [but] the allegations must then be accompanied by a statement of the facts upon which the belief is founded." *Segal v. Gordon,* 467 F.2d 602, 608 (2d Cir.1972). The allegations founded on these facts must be reasonable. Mere suspicions that a fraud may have occurred are not sufficient. *Gross v. Diversified Mortgage Investors,* 431 F.Supp. 1080, 1087 (S.D.N.Y.1977) (Gagliardi, J.), *aff'd,* 636 F.2d 1201 (2nd Cir. 1980). Further, the complaint must give all defendants fair notice of the basis of plaintiff's claim such that they may prepare an adequate defense. *DiVittorio v. Equidyne Extractive Industries, Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987); *Decker v. Massey–Ferguson, Ltd.,* 681 F.2d 111 (2d Cir.1982).

■ Plaintiff has failed to meet this burden with respect to his allegation that the Public Offering was itself part of a scheme to divert improperly Tyco funds. The factual allegations upon which plaintiff's 10b–5 action are predicated primarily concern an alleged failure to disclose material facts regarding the Savoy Loan, a transaction that did not occur until fourteen months after the Public Offering. If the Savoy Loan had followed hard on the heels of the Public Offering, the inference that they were connected might be tenable. Given the fourteen month gap between the

two events, additional factual averments regarding their connectedness are needed to meet the requirements of Rule 9(b).

■ As presently pleaded, plaintiff's Rule 10b–5 claim cannot predate defendants' initial release of allegedly misleading information regarding the Savoy loan. To state a valid claim, he must allege a purchase of Tyco stock subsequent to that date.

Plaintiff has offered to amend his complaint to include his stock purchase dates. He has submitted an affidavit listing purchases as late as October 10, 1987, a date subsequent to Tyco's issuance of allegedly misleading statements regarding the Savoy Loan. Plaintiff's amended complaint shall be deemed further amended to include the stock purchase information contained in this affidavit, thereby curing this particular defect.

■ In cases such as the instant one in which a plaintiff charges multiple defendants with fraudulent representations, Rule 9(b) requires that the nature of each defendant's participation in the fraud be specifically alleged. *Thornock v. Kinderhill Corp.*, 712 F.Supp. 1123, 1128 (S.D.N.Y.1989) (Sweet, J.); *Natowitz v. Mehlman*, 542 F.Supp. 674, 676 (S.D.N.Y.1982) (Duffy, J.). The Rule 9(b) particularity requirements differ, however, depending upon the status of each defendant. Where individual defendants are "insiders or affiliates" of the corporation in question, no specific connection between those individuals and a misrepresentation made in a public document such as an offering memorandum or quarterly report is necessary. *Luce v. Edelstein*, 802 F.2d 49, 55 (2d Cir.1986); *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1249 (2d Cir.1987). It is only where defendants are outsiders that it becomes essential that plaintiffs tie each individual defendant to the misrepresentations in question. *Thornock v. Kinderhill Corp.*, 712 F.Supp. at 1128; *DiVittorio v. Equidyne Extractive Industries, Inc.*, 822 F.2d at 1249.

■ Although the amended complaint describes defendant Benson Selzer as "an insider," Amended Complaint ¶ 11, he did not become a Tyco director until three months after the end of the proposed class period, and plaintiff concedes that, prior to attaining that position, this defendant had not had "any previous official involvement in Tyco's affairs...." *Id.* Moreover, the term "insider" is conclusory and inexact. Plaintiff must define the type of conduct engaged in which renders each defendant liable for the misrepresentation at issue.

■ Defendants Selzer Group and Savoy are clearly not "insiders" for purposes of Rule 9(b), however loosely that term is defined. Although both companies owned Tyco stock during the putative class period, and both share directors with Tyco, there is simply no allegation of interaction among or between these corporate entities sufficient to justify the treatment of Selzer Group or Savoy as insiders.

■ Consequently, plaintiff bears the burden of specifically alleging these defendants' involvement in the dissemination of purportedly fraudulent information. Despite the complaint's frequent attribution of fraudulent omissions to "the defendants" generally, however, *e.g.*, Amended Complaint ¶¶ 58, 96, plaintiff's specific allegations refer only to documents disseminated by defendant Tyco. Amended Complaint ¶¶ 59–64. "Basic principles of corporate law presume that absent a rather egregious disregard of corporate formalities, one corporate entity or an individual with a substantial interest in the corporation is not automatically or readily responsible for the acts of another entity." *The Limited, Inc. v. McCrory Corp.*, 645 F.Supp. 1038, 1044 (S.D.N.Y.1986) (Carter, J.) (citing, *e.g.*, *New York State Teamsters Conference Pension and Retirement Fund v. Hoh*, 554 F.Supp. 519, 525 (N.D.N.Y.1982)).

The level of generality exhibited in the amended complaint is fatal to plaintiff's claim against these defendants. Plaintiff's § 10(b) and Rule 10b–5 claim against defendants Benson Selzer, Selzer Group and Savoy is therefore dismissed for failure to allege fraud with sufficient particularity,

and plaintiff is granted leave to replead this count.[5]

Regarding plaintiff's second cause of action, he correctly maintains that New York courts have, on numerous occasions, imposed liability for negligent misrepresentation absent formal contractual privity. The courts have only found liability, however, where "the plaintiff's intended reliance, on the information *directly transmitted* by the [defendant,] created a bond so closely approaching privity that it was, in practical effect, virtually indistinguishable therefrom." *Credit Alliance v. Arthur Andersen & Co.*, 65 N.Y.2d 536, 545–46, 493 N.Y.S.2d 435, 439, 483 N.E.2d 110, 114 (1985) (emphasis in original) (citing *Glanzer v. Shepard*, 233 N.Y. 236, 135 N.E. 275 (1922)). *See also, Mallis v. Bankers Trust Co.*, 615 F.2d 68, 82 (2d Cir.1980), *cert. denied*, 449 U.S. 1123, 101 S.Ct. 938, 67 L.Ed.2d 109 (1981) (cause of action would not lie unless the misstatement was "expressed *directly*, with knowledge or notice that it [would] be acted upon" by the plaintiffs) (emphasis added).

 Absent privity, New York law also requires that a defendant was aware of a specific party or class of parties which intended to rely upon the defendants' statement. *White v. Guarente*, 43 N.Y.2d 356, 363, 401 N.Y.S.2d 474, 479, 372 N.E.2d 315, 320 (1977) (plaintiff sought redress "not as a mere member of the public, but as one of a settled and particularized class among the members of which the [erroneous statement] would be circulated for the specific purpose of fulfilling the limited partnership ... arrangement"). *See also, Mallis v. Bankers Trust Co.*, 615 F.2d at 82 (defendant was specifically "informed of [the plaintiffs'] identities and intentions"); *Credit Alliance v. Arthur Andersen & Co.*, 65 N.Y.2d at 551, 493 N.Y.S.2d at 443, 483 N.E.2d at 118 (defendants must have

been aware that their statements were to be used for a particular purpose, "in furtherance of which a known party or parties was intended to rely"). Both of these requirements seek to address the courts' concern that liability not be extended to unknown or unforeseen third parties. *Ultramares Corp. v. Touche*, 255 N.Y. 170, 179, 174 N.E. 441 (1931).

Plaintiff fails to satisfy either of these requirements. The communications in the present case were in the form of a press release, three quarterly reports, and a Form S–1 Registration Statement filed with the Securities Exchange Commission. Amended Complaint ¶ 61–64. Thus, they were far from direct or personal.

 Further, plaintiff and the putative class are part of an infinite number of investors who *might* have chosen to invest in Tyco stock based on the Company's alleged misrepresentations. Plaintiff insists that the New York courts' concern with limitless liability to an indefinite plaintiff class is misplaced in the instant suit because liability here is limited to purchasers of Tyco securities during the class period, a group which plaintiff characterizes as "a determinate number of people." Memorandum of Law in Opposition to Defendants' Motion to Dismiss at 33. In this regard, plaintiff fundamentally misconstrues the concern expressed by the New York courts.

By necessity, the plaintiff class in virtually every pending suit will contain a determinate or determinable number of people. For purposes of imposing liability for negligent misrepresentation, however, New York law requires that those to whom the prospective defendant owes a duty were ascertainable *before* the alleged injury took place. Only in this way can a defendant be expected to fulfill his or her duty of care to these individuals.[6]

---

**5.** Defendants challenge plaintiff's § 10(b) and Rule 10b–5 claim as to defendants Benson Selzer, Selzer Group and Savoy on numerous other grounds. Because this claim is dismissed as to these defendants, the court does not reach these issues.

**6.** Plaintiff's argument that the requirement of privity or some similarly intimate relationship

is inapplicable to "corporate insiders and controlling persons," Memorandum of Law in Opposition to Defendants' Motion to Dismiss, at 32–33, is without merit. In *Mallis v. Bankers Trust Co.*, 615 F.2d 68, 82 (2d Cir.1980), for example, the court explicitly applied to the securities context "the classic genre of cases limiting the scope of accountant liability...."

■ There is also no support for plaintiff's assertion that a buyer and seller of securities stand in a fiduciary relationship sufficient to impose liability upon the seller for fraudulent misrepresentation under New York law. Plaintiff's negligent misrepresentation claim is therefore dismissed without prejudice.

■ Defendants' motion to dismiss plaintiff's derivative claim must be decided under the laws of Delaware, the state of incorporation. *Burks v. Lasker,* 441 U.S. 471, 99 S.Ct. 1831, 60 L.Ed.2d 404 (1979). However, the applicable Delaware and federal laws are functionally equivalent. *In re E.F. Hutton Banking Practices Litigation,* 634 F.Supp. 265, 270 (S.D.N.Y.1986) (Knapp, J.). Both require that the complaint allege with particularity any efforts made by the plaintiff to obtain the desired action from within the corporation or the reasons for not making such an effort.[7]

The Delaware Supreme Court has held that a demand is futile only where, "under the particularized facts alleged, a reasonable doubt is created that: (1) the directors are disinterested and independent and (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." *Aronson v. Lewis,* 473 A.2d 805, 814 (Del.Supr.1984). Further, "[i]t is plaintiff's burden to allege with particularity that the improper motive in a given set of circumstances ... was the sole or primary purpose of the wrongdoer's conduct." *Pogostin v. Rice,* 480 A.2d 619, 627 (Del. Supr.1984).

■ As to the independence of the directors, it is clear that plaintiff's allegations of acquiescence by the board in the challenged conduct and potential liability on the part of individual directors are not

sufficient to meet his burden. *In re E.F. Hutton Banking Practices Litigation,* 634 F.Supp. at 272 (citing *Lewis v. Graves,* 701 F.2d 245 (2d Cir.1983); *Pogostin v. Rice,* 480 A.2d 619, 624 (Del.Supr.1984); *Aronson v. Lewis,* 473 A.2d 805 (Del.Supr.1984)). Plaintiff also alleges, however, that a majority of the directors were biased due to their various familial and financial relationships with defendant Benson Selzer.

■ In order to rebut the presumption of director independence on these grounds, "there must be coupled with the allegation of control such facts as would demonstrate that through personal or other relationships the directors are beholden to the controlling person." *Aronson v. Lewis,* 473 A.2d at 816. Because Tyco had six directors at the time that the amended complaint was filed, plaintiff must demonstrate that at least four of these directors were "interested." *Lewis v. Graves,* 701 F.2d 245, 249 (2d Cir.1983); *Tabas v. Mullane,* 608 F.Supp. 759, 766 (D.C.N.J.1985) (interpreting Delaware law).

■ Defendant John Selzer is Benson Selzer's son. Defendant Ofrichter was an officer and director of several companies in which Benson Selzer has an interest. These relationships are averred with considerable particularity by plaintiff and arguably create a reasonable doubt as to the independence of these directors. *See e.g., Pogostin v. Rice,* 480 A.2d at 624.

■ Defendant Gratch is an attorney to whom Benson Selzer is alleged to have directed substantial legal business from other enterprises. Defendant Handel's law firm is also alleged to have received business as counsel to Tyco as a result of his association with Benson Selzer. Although it is conceivable that this type of relation-

7. The pertinent federal rule, Rule 23.1, F.R. Civ.P., states in relevant part:
 The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for the plaintiff's failure to obtain the action or for not making the effort. The applicable state rule is Delaware Chancery Rule 23.1 which provides:

 In a derivative action brought by 1 or more shareholders or members to enforce a right of a corporation ... [t]he complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and the reasons for his failure to obtain the action or for not making the effort.

ship *could* motivate a director to act improperly, this possibility is not sufficient to overcome the presumption of independence which is observed by the Delaware courts. *See, e.g., Maldonado v. Flynn,* 597 F.2d 789, 794 (2d Cir.1979) (receipt of substantial attorneys fees does not demonstrate lack of independence absent a claim that the director voted in exchange for some *quid pro quo* ); *Tabas v. Mullane,* 608 F.Supp. at 768 (interpreting Delaware law; lawyer/client relationship inadequate to demonstrate "interest").

 No specific allegations of self-interest are asserted regarding defendant Grey, and defendant Gellman is merely alleged to have served on the board of a company of which Benson Selzer is *now* a controlling shareholder. These defendants may not be considered interested such as to excuse demand.

Plaintiff has failed to meet his burden of creating a reasonable doubt as to the independence of a majority of Tyco directors. Defendants' motion to dismiss this claim for failure to make a demand upon the board is therefore granted.

Dismissal for violation of Local Civil Rule 4(c) is discretionary.[8] Because defendants do not assert that plaintiff's delay in filing for class certification has prejudiced them in any way, and there is no apparent prejudice to the putative class, plaintiff's class action allegations will not be stricken. *Weinberg v. Lear Fan Corp.,* 102 F.R.D. 269, 271 (S.D.N.Y.1984) (Weinfeld, J.) (dismissal unnecessary where no prejudice to defendant was demonstrated); *Feder v. Harrington,* 52 F.R.D. 178, 182 (S.D.N.Y.1970) (Tenney, J.) ("absent a showing of prejudice to either the class or the defendant, denying the motion would seem to be a harsh result which could prejudice the class").

**8.** Local Civil Rule 4(d) states:
> If the party asserting the claim for or against a class fails to make a timely motion under paragraph (c) of this rule, the opposing party shall move, within thirty days after expiration of the time allowed for such a motion, to dismiss the action as a class action. In ruling upon such a motion, the court may grant or deny it *in the exercise of its informed discretion,* may deny it, but award costs, expenses and counsel fees against the party seeking the maintenance of the claim as a class action or said party's counsel, or may grant such other relief as may be appropriate in all the circumstances. (emphasis added).

*Conclusion*

In sum, plaintiff may proceed with his claim under the 1934 Act against defendants Tyco, Ofrichter, Grey, Gratch, Gellman, Handel, Pearce, and John Selzer. Defendants' motion to strike the class allegations of this claim is denied, and plaintiff's amended complaint is deemed further amended to include the stock purchase information contained in his affidavit.

Plaintiff's securities fraud claim is dismissed as against defendants Benson Selzer, Selzer Group and Savoy. Plaintiff's negligent misrepresentation and derivative actions are dismissed as to all defendants. Plaintiff is given until October 27, 1989 to file an amended complaint which sets forth the fraud, negligent misrepresentation and derivative claims in a manner consistent with this opinion.

IT IS SO ORDERED.