Lester **BRICKMAN**, Plaintiff,

v.

**TYCO TOYS, INC.,** Samuel Ofrichter, Richard E. Grey, John A. Selzer, Ariel Gratch, Jerome I. Gellman, Joel M. Handel, Benson A. Selzer, Geoffrey T. Selzer, and Harry J. Pearce, Defendants.

No. 88 Civ. 3936 (RLC).

United States District Court,
S.D. New York.

Jan. 16, 1990.

**102**

Goodkind, Labaton & Rudoff, New York City (Edward Labaton, Joseph V. Sternberg and Richard Paley, of counsel), for plaintiff Brickman.

Curtis, Mallet–Prevost, Colt & Mosle, New York City (Joseph D. Pizzurro, Louis Craco, Jr. and Harold J. Bacon, of counsel), for defendant Tyco Toys, Inc.

Baer Marks & Upham, New York City (Allan D. Dinkoff and Jane W. Arnone, of counsel), for defendants Samuel Ofrichter, John A. Selzer, Ariel Gratch, Jerome I. Gellman, Joel M. Handel, Benson A. Selzer and Geoffrey T. Selzer.

Blodnick, Abramowitz, Newman, Schultz & Bass, Lake Success, N.Y. (Mark M. Rottenberg and Frederick Newman, of counsel), for defendants Richard E. Grey and Harry J. Pearce.

## OPINION

ROBERT L. CARTER, District Judge.

The issues before the court are defendants' motion for dismissal on numerous grounds and plaintiff's motion for class certification. Plaintiff Lester Brickman brought this action against defendants Tyco Toys, Inc. ("Tyco"), Tyco's former officers and inside directors, and several other individual and corporate defendants [1] alleging violations of federal securities laws, negligent misrepresentation and breach of fiduciary duty in connection with three purportedly improper transactions. In an opinion dated October 4, 1989, *Brickman v. Tyco Toys, Inc.*, 722 F.Supp. 1054

---

**1.** Originally named as defendants were Tyco, Samuel Ofrichter, Richard Grey, John Selzer, Ariel Gratch, Jerome Gellman, Joel Handel, Harry Pearce, Geoffrey Selzer, Benson Selzer, the Selzer Group, L.P., and Savoy Industries.

(S.D.N.Y.1989) (Carter, J.), familiarity with which is presumed, the court dismissed plaintiff's claims for misrepresentation and breach of fiduciary duty and dismissed the securities claim as to three of the defendants, all without prejudice. Plaintiff has repleaded his securities claim against all individual defendants but Geoffrey Selzer, as well as his claim for breach of fiduciary duty on behalf of Tyco against all individual defendants.[2] Second Amended Complaint, ¶¶ 82–96.

The facts germane to the instant motions are similar to those set forth in the court's previous opinion and can be stated briefly here. Plaintiff, a shareholder of Tyco, asserts that a public offering of Tyco common stock on February 20, 1986 (the "Public Offering"), and a series of transactions conducted by the defendants thereafter, were part of an unlawful scheme to divert funds from Tyco to other business entities in which the defendants had an interest. The first of these transactions was a $2.5 million loan made by Tyco to Savoy Industries (the "Tyco Loan") on April 22, 1987.[3] Plaintiff asserts that the defendants' participation in, and failure to disclose material facts regarding the Tyco Loan and subsequent transactions constitute a violation of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), 78t (1981 & Supp.1989), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5, as well as a breach of defendants' fiduciary duty to Tyco shareholders.

## PARTIES' CONTENTIONS

Defendants seek to dismiss plaintiff's federal and state law claims on numerous grounds and oppose plaintiff's motion for class action certification. First, defendants contend that plaintiff may not maintain both a derivative claim on behalf of Tyco, and a direct claim against Tyco in the same action. Defendants also seek to have plaintiff's securities claim dismissed as to all defendants on the ground that the Rule 10b–5 allegations in the complaint fail to state a claim upon which relief may be granted under Rule 12(b)(6), F.R.Civ.P. Defendants also move for dismissal of the Rule 10b–5 claim against Benson Selzer under Rule 12(b)(6), arguing that he owed no duty of disclosure to plaintiff.

Next, defendants once again move for dismissal of plaintiff's securities fraud claim against Benson Selzer for failure to plead fraud with sufficient particularity in violation of Rule 9(b), F.R.Civ.P. They assert that the complaint does not aver facts supporting an inference of controlling person liability or of scienter of Benson Selzer, and that plaintiff has failed to plead with particularity that Benson Selzer aided and abetted a Rule 10b–5 violation.

As to plaintiff's derivative claims, defendants argue that plaintiff lacks the capacity to prosecute the derivative claims because he has failed to make a demand upon the board of directors. They further assert that the derivative claims against Benson Selzer, Geoffrey Selzer, and Harry J. Pearce must be dismissed because these defendants are not charged with any breach of fiduciary duty.

Finally, in opposing plaintiff's motion for class certification, defendants argue that plaintiff is not properly a member of the class that would be appropriate in this suit, and therefore his claims are not typical of the class. Defendants further contend that because plaintiff seeks to assert both a derivative claim on behalf of Tyco and a class action claim against Tyco and the director defendants, he fails to satisfy the adequacy of representation requirement of Rule 23(a)(4), F.R.Civ.P.

Plaintiff responds first that there is no conflict inherent in the concurrent prosecution of direct and derivative claims. As to his securities cause of action, he argues

---

**2.** Savoy Industries, Inc. and the Selzer Group, L.P. are not named in the Second Amended Complaint and are no longer defendants in this suit. Further, plaintiff has abandoned his claim for negligent misrepresentation.

**3.** The previous opinion in this case referred to this transaction as the "Savoy Loan." *See, e.g.,* 722 F.Supp. at 1058. Because the parties now choose to refer to the transaction as the "Tyco Loan," the court will do likewise. The other challenged transactions are described in detail in the prior opinion. *Id.* at 1058–59.

that the incidents of non-disclosure alleged in the complaint make out a claim, and that that claim is alleged sufficiently and with an adequate degree of particularity as against defendant Benson Selzer.

Regarding the derivative claim, plaintiff concedes his failure to make a demand upon the Tyco board but argues that such demand should be excused as futile. He further contends that defendants Pearce, Benson Selzer and Geoffrey Selzer owed a fiduciary duty to Tyco by virtue of influence exerted by these defendants over the corporation.

In defending his motion for class certification, plaintiff argues that his stock purchases and alleged injury make his claims typical of the proposed class and reiterates his position that there is no inherent conflict in simultaneous class and derivative actions.

## DISCUSSION

### I.

### A.

■ Whatever its relevance to the issue of class certification,[4] the fact that plaintiff seeks to prosecute direct class and derivative actions simultaneously does not provide a basis for dismissal for failure to state a claim under Rule 12(b)(6), F.R. Civ.P. Indeed, all of the cases cited by defendants in support of such dismissal in fact speak only to the issue of class certification under Rule 23, F.R.Civ.P. *See, e.g., Kamerman v. Steinberg*, 113 F.R.D. 511, 515–16 (S.D.N.Y.1986) (Motley, J.), *modified*, 123 F.R.D. 66 (S.D.N.Y.1988); *Petersen v. Federated Development Co.*, 416 F.Supp. 466, 475 n. 6 (S.D.N.Y.1976) (Haight, J.); *Hawk Indus., Inc. v. Bausch & Lomb, Inc.*, 59 F.R.D. 619, 624 (S.D.N.Y. 1973) (MacMahon, J.); *Ruggiero v. American Bioculture, Inc.*, 56 F.R.D. 93, 95 (S.D. N.Y.1972) (Bauman, J.). Defendants' mo-

tion to dismiss on this ground is therefore denied.

### B.

■ The relevant issue on a Rule 12(b)(6) motion in the securities fraud context is "whether the plaintiff[ ] can prove any set of facts that, had they been disclosed, would have been considered by the reasonable shareholder to have 'significantly altered the "total mix" of information made available.'" *Joyce v. Joyce Beverages, Inc.*, 571 F.2d 703, 707 (2d Cir.1978) (quoting *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976)). The materiality of undisclosed information to investors is generally an issue for the trier of fact to ascertain. *T.S.C. Industries v. Northway*, 426 U.S. at 450, 96 S.Ct. at 2132; *Joyce v. Joyce Beverages, Inc.*, 571 F.2d at 707.[5] However, if the court finds that the information was in fact disclosed, under the facts alleged in the complaint, then of course plaintiff has failed to state a cause of action. *Rodman v. Grant Foundation*, 460 F.Supp. 1028, 1035 (S.D.N.Y.1978) (Pollack, J.), *aff'd*, 608 F.2d 64 (2d Cir.1979).

Plaintiff's substantive allegations are that the April 23, 1987 press release issued by Tyco failed to reveal: (1) that the proceeds of the Tyco Loan would be used by Savoy Industries' (Savoy's) subsidiary, Robert Bruce Industries ("RBI"); (2) that the Tyco Loan and subsequent stock purchase (the "Tyco Purchase") were interdependent; (3) that the collateral for the Tyco Loan was to be switched in connection with the Tyco Purchase; and (4) that Tyco was "controlled by" Savoy and that the two companies had overlapping directorships. Second Amended Complaint ¶ 52. Plaintiff further avers that the subsequent quarterly reports issued by Tyco failed to disclose any of the above information or that the director defendants "were prepared to waste substantial assets of the Company...." *Id.* at ¶¶ 53–54.

---

**4.** This issue is discussed *infra* at 108–09.

**5.** For this reason, defendants' assertion that they were under no obligation to disclose Savoy's use of the proceeds of the loan because

such information could provide "no further informational benefit" to a purchaser or seller of Tyco shares, Defendants' Memorandum at 13, is not dispositive.

Despite plaintiff's allegation that the Tyco Loan was made to RBI, a closer reading of the complaint reveals that the loan was in fact made to Savoy which then loaned the funds to its subsidiary RBI. Second Amended Complaint ¶ 41. As a matter of law, however, it cannot be said that the *known* intention of the borrower regarding the use of the borrowed funds was immaterial to Tyco investors. Notwithstanding defendants' assertion to the contrary, the Second Amended Complaint, ¶ 86, alleges their knowledge as to the intended use of the funds, and therefore sets forth a cause of action as to this information.

As to defendants' alleged failure to reveal the interdependent nature of the Tyco Loan and the Tyco Purchase, plaintiff concedes in the complaint that the April 23, 1987 press release reported both transactions. Certainly the juxtaposition of these two transactions in the same document was sufficient to put the potential investor on notice that they were interrelated to some degree. *Rodman v. Grant Foundation,* 460 F.Supp. at 1035 (granting Rule 12(b)(6) motion where pertinent information "either was indeed disclosed or was easily enough available by duly diligent inquiry that it need not have been disclosed").

As to the February, 1988 exchange of collateral, plaintiff acknowledges that the 10K form filed by Tyco on March 31, 1988, disclosed the exchange, Second Amended Complaint ¶ 61, and defendants do not claim that the switch was disclosed in the April 23, 1987 press release. Consequently, the relevant issue is whether the complaint alleges that defendants contemplated the switch at the time of the release such that they could conceivably have concealed it from investors.

Plaintiff claims that the switch was part of an ongoing scheme, to transfer funds to the financially troubled RBI. Second Amended Complaint ¶¶ 86, 87. The clear inference from this allegation is that the Tyco Loan was entered into with the intention of subsequently exchanging the collateral. *See Frazier v. Coughlin,* 850 F.2d 129, 129 (2d Cir.1988) (on Rule 12(b)(6) mo-

tion, all reasonable inferences must be drawn in favor of plaintiff). Recognizing that "the court should not dismiss the complaint pursuant to Rule 12(b)(6) unless it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief,'" *Goldman v. Belden,* 754 F.2d 1059 (2d Cir.1985) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957) (footnote omitted)), the court finds that defendants' prior knowledge of the impending collateral exchange is sufficiently alleged to state a claim for securities fraud.

The complaint avers that Savoy relinquished ownership of Tyco on February 20, 1986, Second Amended Complaint ¶ 38, and, consequently, the "control" which plaintiff mentions can only refer to the overlapping composition of the Tyco and Savoy directorships. Defendants concede that the complaint successfully avers the concealment of this information. They argue, though, that Tyco did disclose this interrelationship in its 1986 10K Annual Report filed with the Securities and Exchange Commission on March 31, 1987, three weeks before the date of the Tyco Loan. Defendants' Memorandum of Law in Support of Motion to Dismiss (Defendants' Memorandum), Exhibit B. However, in a motion to dismiss pursuant to Rule 12(b)(6), it is improper for the district court to consider material outside of the complaint and exhibits attached thereto. *Goldman v. Belden,* 754 F.2d 1059, 1066 (2d Cir.1985). Looking only to the complaint, plaintiff has successfully alleged the nondisclosure of this information.

■ Finally, regarding the quarterly reports, it is clear that defendants were under no obligation to disclose their "true" or subjective purpose in entering into the transactions independently of the purely factual matters discussed above. *See, e.g., Rodman v. Grant Foundation,* 460 F.Supp. 1028, 1038 (S.D.N.Y.1978) (Pollack, J.) ("The cases do make clear ... that failure to disclose ... one's actual subjective purpose does not violate the securities laws"). Standing alone, the allegation that defendants concealed the "fact" that they

"were prepared to waste substantial assets of the Company,...." Second Amended Complaint at ¶ 53–54, fails to state a claim. *Rodman v. Grant Foundation*, 460 F.Supp. at 1038. *See also, Golub v. PPD Corp.*, 576 F.2d 759, 765 (8th Cir.1978) (rejecting viability of plaintiffs' claim that proxy statement issued by defendants did not disclose defendants' "true motivation" in selling the assets of the company).

In short, the complaint succeeds in stating a claim for which relief may be granted. Specifically, the allegations that the April 23, 1987 press release and the quarterly reports failed to disclose the transfer of funds to RBI, the contemplated exchange of collateral, and the interrelated Tyco and Savoy directorships, establish a cause of action under the securities laws.

### C.

■ In the previous opinion in this case, 722 F.Supp. at 1061, the court determined that plaintiff had not averred Benson Selzer's role in the alleged fraud with the requisite degree of particularity. Thus, if the second amended complaint alleges no new facts in this regard, the disposition of this issue must be the same.

The court finds that the complaint again fails to meet the particularity requirements of Rule 9(b), F.R.Civ.P. Although plaintiff characterizes Benson Selzer as a "controlling person" under section 20 of the 1934 Act, 15 U.S.C. § 78t, his substantive allegations regarding Benson Selzer's control over the Tyco Board, Second Amended Complaint ¶¶ 14, 23, do not plead with any degree of specificity that this defendant was in "some meaningful sense [a] culpable participant[ ] in the fraud perpetrated by [the] controlled persons," as either a primary actor or an aider and abettor. *Lanza v. Drexel & Co.*, 479 F.2d 1277, 1299 (2d Cir.1973); *see also, Gordon v. Burr*, 506 F.2d 1080, 1086 (2d Cir.1974) (controlling person liability requires that the purported controlling person "had knowledge of the fraudulent representations" and "culpably participated in them"); *O'Connor & Assoc. v. Dean Witter Reynolds, Inc.*, 529 F.Supp. 1179, 1195 (S.D.N.Y.1981) (Lasker, J.) (requiring allegations that alleged controlling person "lent substantial assistance to the alleged fraud").

In his third attempt, plaintiff adds nothing to explain precisely what hand Benson Selzer played in the alleged fraud. Plaintiff's securities claim is therefore dismissed with prejudice as against defendant Benson Selzer.

### D.

■ In the prior opinion in this case, 722 F.Supp. at 1063–64, the court found that directors Ofrichter and John Selzer were "interested" in the challenged transactions, but that there was no conflict as to a majority of the board such that demand could be excused on grounds of futility. In his second amended complaint, therefore, plaintiff need only demonstrate futility as to two additional directors.[6] Plaintiff has accomplished this task.

Beyond mere repetition of the allegations already rejected by the court as insufficient, *id.*, plaintiff now argues that defendants Gratch and Handel "were on both sides and in the middle of the complained of transactions as directors and attorneys for each company, as well as for their own for-profit investment partnership." Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Second Amended Complaint at 38. Specifically, plaintiff alleges that Gratch was a director of Olympic Mills Corporation, an RBI subsidiary, Second Amended Complaint ¶ 18, that Handel was a director of RBI itself, *id.* at ¶ 20, and that both were Tyco directors at the time of the challenged transactions. *Id.* at ¶¶ 18, 20. It is also averred that these defendants were directors of Concord International Limited which partic-

---

6. For purposes of determining demand futility, the court must look to the composition of the board at the time that the action was commenced. *Lewis v. Graves*, 701 F.2d 245, 250 (2d Cir.1983). At the time this suit was initiated, Tyco's board was composed of defendants Ofrichter, Grey, Gratch, Gellman, Handel and John Selzer. Thus, plaintiff must demonstrate futility as to a majority, or four directors, in order to prevail. *Id.* at 249.

ipated indirectly in one of the transactions complained of. *Id.*

Accepting the well-pleaded allegations of the complaint as true, *Dopp v. American Electronic Laboratories, Inc.*, 55 F.R.D. 151, 153 (S.D.N.Y.1972) (Weinfeld, J.), these additional assertions are sufficient under Delaware law to raise a reasonable doubt that a majority of the directors were "interested." *Aronson v. Lewis*, 473 A.2d 805, 814 (Del.Supr.1984). Plaintiff's failure to make a demand upon the Tyco board is therefore excused on grounds of futility and he may proceed with his derivative claim.

### E.

■ Plaintiff is correct in his assertion that a defendant need not be a director or officer in order to owe a fiduciary duty to a corporation and its shareholders. Such a duty may arise from the exercise of control with respect to that corporation. *Harriman v. E.I. DuPont De Nemours & Co.*, 372 F.Supp. 101, 105–06 (D.Del.1974) (interpreting Delaware law). However, "[i]t is only when a person affirmatively undertakes to dictate the destiny of the corporation that he assumes such a fiduciary duty." *Id.* at 106 (emphasis in original) (citations omitted).

Regarding Benson Selzer, plaintiff relies upon that defendant's purported role as a "control person" of Tyco. Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Second Amended Complaint at 48. This characterization has been rejected by the court as unsubstantiated by the facts alleged in the complaint and, for the same reasons, plaintiff has failed to establish a fiduciary duty on the part of Benson Selzer.

Inexplicably, plaintiff fails to direct the court to any allegation in the complaint which tends to establish the existence of a fiduciary duty of defendant Pearce to Tyco, and none is evident to the court. Similarly, the purported role of defendant Geoffrey Selzer in the challenged transactions, Second Amended Complaint ¶¶ 55–60, is also insufficient to establish the degree of control necessary to create a fiduciary duty. As defendants point out, Geoffrey Selzer is not alleged to have exercised any control over Tyco before occupying a directorship several months after the class period.

For the reasons stated above, plaintiff's derivative action is dismissed with prejudice as to defendants Pearce, Benson Selzer, and Geoffrey Selzer.

### II.

The requirements for certification of a class action under Rule 23(a), F.R.Civ.P., are numerosity, commonality, typicality and adequacy of representation.[7] Plaintiff in this case must also meet the dictates of Rule 23(b)(3), F.R.Civ.P., which requires that common questions of law or fact predominate over those affecting only individual members, and that a class action is the superior method of adjudicating the controversy.

Defendants do not dispute that plaintiff has satisfied the Rule 23(a) numerosity and commonality requirements and both of the Rule 23(b)(3) requirements, and the court agrees that these are met. Instead, defendants challenge plaintiff's motion on grounds of typicality and adequacy of representation.

### A.

■ The court may not look to the merits of plaintiff's claim in determining whether class certification is appropriate. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1974). However, a pre-certification inquiry "addressed not to the *merits* of plaintiff's individual claim, but to whether he is asserting a claim which, *assuming*

---

7. Rule 23(a) requires in pertinent part that: One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

*its merit*, will satisfy the requirements of Rule 23, has never been regarded as violative of the rule stated in *Eisen....*" *Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 571 (2nd Cir.1982) (quoting *Doctor v. Seaboard Coast Line Railroad Co.*, 540 F.2d 699, 707 (4th Cir.1976) (emphasis in original) (footnote omitted)). If, under the facts alleged in the complaint, defendants' purportedly fraudulent omissions and misstatements did not occur until after the dates of plaintiff's stock purchases, then plaintiff could not have relied on the alleged non-disclosure and his claim cannot be typical of those who did. The typicality of plaintiff's claim is therefore closely related to the class period, if any, that is appropriate.

■ As discussed above, the allegations upon which plaintiff's securities fraud claim are predicated chiefly concern defendants' failure to disclose material facts regarding the Tyco Loan in a press release and subsequent quarterly reports. *See also, Brickman v. Tyco Toys, Inc.*, 722 F.Supp. at 1060; Second Amended Complaint ¶ 83. The first allegedly misleading statement, the press release, was disseminated on April 23, 1987, one day after the Tyco Loan. Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Second Amended Verified Complaint at 18–19. Plaintiff avers that defendants disclosed the pertinent information regarding the Tyco Loan and other challenged transactions in its 1987 Annual Report to Shareholders which reached the investing public by the first week of May, 1988. Second Amended Complaint ¶ 61. Assuming the facts alleged in the complaint, investors who purchased Tyco stock between the dissemination of the press release and the disclosure of the challenged transactions relied upon the misstatements and therefore constitute the proper class for this action. The appropriate interval

for the putative class period is therefore between April 23, 1987 and May 7, 1988.

■ Plaintiff's purchases of Tyco stock occurred on March 12, August 31, and October 23, 1987, Second Amended Complaint ¶ 12. Hence, two of them fall within the prospective class period, and defendants' assertion that plaintiff could not be a member of the proposed class is therefore erroneous. In this and all other respects,[8] plaintiff's claim is "typical of the claims and defenses of the class" as required by Rule 23(a)(3), as his claim arises from the same alleged course of conduct and is based on the same legal theory as is that of the class. *Dura–Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 99 (S.D.N.Y. 1981) (Edelstein, J.).

### B.

■ Plaintiff's ability to protect the interests of the proposed class fairly and adequately is another matter. In so far as class certification is concerned, the court agrees with defendants' position that plaintiff may not at once sue derivatively on behalf of Tyco, and bring a class action against that corporation and its directors. The adequacy of representation element of Rule 23(a) requires that the class plaintiff possess no interest antagonistic to that of the class. *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562 (2d Cir.1968); *Michaels v. Ambassador Group, Inc.*, 110 F.R.D. 84, 90 (E.D.N.Y.1986); *Pellman v. Cinerama, Inc.*, 89 F.R.D. 386, 389 (S.D.N.Y.1981) (Sofaer, J.). Plaintiff's concurrent prosecution of a derivative suit on behalf of Tyco and a securities class action against Tyco would violate that principle.

Clearly, the proposed class and derivative actions present at least a theoretical conflict. Substantial recovery on the class claim may reduce the potential recovery on

---

**8.** Defendants' contention that plaintiff's alleged injury somehow makes him an inappropriate class representative is also without merit. Plaintiff proceeds upon the theory that material omissions of information about the Tyco Loan artificially inflated the market price at which he and class members purchased Tyco stock. Under the facts alleged in the complaint, therefore,

he has averred financial injury at defendants' hands comparable to that of other class members. The extent to which damages may differ among individual class members is not alone sufficient to defeat class certification. *See, e.g., In re Am International, Inc. Securities Litigation,* 108 F.R.D. 190, 196 (S.D.N.Y.1985) (Sprizzo, J.).

behalf of the corporation on the derivative claim. Although the court declines to embrace the *per se* rule against contemporaneous derivative and direct class suits which has been adopted by other judges in this jurisdiction, *see, e.g., Kamerman v. Steinberg,* 113 F.R.D. at 515–16; *Stull v. Baker,* 410 F.Supp. 1326, 1336–37 (S.D.N.Y.1976) (Conner, J.) (dictum); *Hawk Industries, Inc. v. Bausch & Lomb, Inc.,* 59 F.R.D. at 623–24, putative class representatives in such suits should at least be expected to explain why potential conflicts are not likely to materialize in their particular case.[9] As plaintiff is unable to do so here, the court finds class certification inappropriate so long as plaintiff maintains his derivative action.

## CONCLUSION

To recapitulate, defendants' motion to dismiss the securities claim for failure to state a cause of action is denied as is their motion to dismiss the derivative suit due to plaintiff's failure to make a demand upon the Tyco board. The securities claim is dismissed with prejudice as against Benson Selzer for failure to plead fraud with sufficient particularity, and the derivative action is dismissed with prejudice as to defendants Pearce, Benson Selzer and Geoffrey Selzer. Finally, plaintiff's motion for class certification is denied as he cannot maintain that suit and his derivative action simultaneously.

IT IS SO ORDERED.

---

**9.** In *Kane Associates v. Clifford,* 80 F.R.D. 402 (E.D.N.Y.1978), for example, the corporation named in the class action had been liquidated and its assets distributed. Consequently, the derivative action sought "to do no more than fill the coffers of [the corporation] so that any class action recovery [would] be meaningful." *Id.* at 408. *See also, Kamerman v. Steinberg,* 113 F.R.D. 511, 516 (S.D.N.Y.1986) (Motley, C.J.), *modified,* 123 F.R.D. 66 (S.D.N.Y.1988) (distinguishing *Kane Associates* ); *Heilbrunn v. Hano-* *ver Equities Corp.,* 259 F.Supp. 936 (S.D.N.Y. 1966) (Frankel, J.) (derivative and securities fraud claims pleaded in the alternative rather than concurrently). *Cf., Petersen v. Federated Development Co.,* 416 F.Supp. 466, 475 n. 6 (S.D.N.Y.1976) (Haight, J.) (where plaintiff has made no showing that a conflict of interest will not arise, "it must be assumed that he presses the [securities] claim in his individual capacity only").