**Edward ADLER, et al., Plaintiffs,**

v.

**BERG HARMON ASSOCIATES, et al., Defendants.**

No. 89 Civ. 8114 (WCC).

United States District Court, S.D. New York.

July 17, 1995.

---

Beigel Schy Lasky Rifkind Goldberg & Feritik, Chicago, IL (Kenneth P. Caniglia, of counsel), for plaintiffs.

Saul Feiger, Kew Garden Hills, NY (Saul Feiger, of counsel), for defendants.

I. Michael Bayda, Jacobs Persinger & Parker, New York City, for defendants.

### OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge:

Plaintiffs Edward Adler et al. bring this action for damages against Berg Harmon Associates, et al. for violations of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b) and Securities and Exchange Commission ("SEC") Rule 10b–5 promulgated thereunder; Racketeering and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961

et seq.; and common law fraud. The action is presently before the Court on defendants' motion for summary judgment. For reasons explained below, defendants' motion is granted.

## PROCEDURAL HISTORY AND BACKGROUND

This is the fourth order and opinion issued by this Court in this action. The original complaint was filed on December 7, 1989, which alleged violations of the securities laws, RICO, common law fraud, breach of fiduciary duty and negligent misrepresentation. On June 20, 1991, in two cases, the Supreme Court created a retroactive uniform one-and-three-year limitations period for actions brought under Section 10(b) of the Securities and Exchange Act. *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991); *James B. Beam Distilling Co. v. Georgia,* 501 U.S. 529, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991). As a result, plaintiffs amended their complaint to withdraw their securities claims except to the extent that they served as predicate acts for their RICO claims. The defendants moved to dismiss the remaining claims, which we granted in an order and opinion dated April 7, 1992, with leave to replead. Meanwhile, Congress modified the retroactive effect of *Lampf* by enacting § 27A of the Securities and Exchange Act. Consequently, we permitted plaintiffs to reinstate their securities claims in an order and opinion dated April 27, 1992.

Defendants then filed a second motion to dismiss or, in the alternative, a motion for summary judgment. On March 29, 1993, we issued an order and opinion dismissing all but one of plaintiffs' securities law claims. Similarly, we dismissed the RICO and common law fraud claims except to the extent that they were based on the one remaining securities law claim. Plaintiffs' claims for negligent misrepresentation and breach of fiduciary duty were dismissed in their totality. Defendants now move for summary judgment on the remaining securities law claim.

The facts have been detailed in our prior opinions, familiarity with which is presumed.

The relevant facts for purposes of this motion are as follows. In the early 1980's Berg Harmon, a joint venture between Harmon Assoc. and Berg Ventures, Inc., syndicated and promoted the sale of limited partnerships in 50 real estate tax shelters, 44 of which are at issue in this action. The partnership units were marketed to a limited number of investors through the use of Private Placement Memoranda (PPMs). The investments substantially declined in value in the late 1980's. The investor-plaintiffs claim that the decline was due to the inevitable collapse of defendants' pyramid or "Ponzi" scheme which was fraudulently concealed in the PPMs. The remaining securities law claim in the Complaint is that the PPMs for each of the 44 properties misrepresented that present rents from the properties were sufficient to cover normal operating expenses and debt service. Compl. ¶ 11(a), 13.

## DISCUSSION

Summary judgment is to be granted when "there is no genuine issue as to any material fact and [ ] the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment is appropriate only when, after drawing all reasonable inferences in favor of the party opposing the motion, no reasonable trier of fact could find for the nonmoving party. *Lund's, Inc. v. Chemical Bank,* 870 F.2d 840, 844 (2d Cir. 1989). However, the nonmoving party cannot avoid summary judgment by resting solely on the contentions in its pleadings. Rather, if the moving party puts forth evidence on an issue, the nonmoving party "must set forth specific facts showing there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

■ In order to prevail on a securities fraud claim under § 10(b) and Rule 10b–5, plaintiffs must prove that defendants knowingly and intentionally made material misstatements or omissions in connection with the purchase or sale of a security, upon which plaintiffs reasonably and detrimentally relied and suffered a loss caused thereby. *Burke v. Jacoby,* 981 F.2d 1372, 1378 (2d Cir.1992), *cert. denied,* — U.S. ——, 113 S.Ct. 2338, 124 L.Ed.2d 249 (1993). As noted, the remaining allegation in the Complaint

is that the PPMs falsely stated that present rents were sufficient to pay normal operating expenses and debt service. Plaintiffs allege that in fact all of the properties were experiencing operating deficits; that defendants made these statements knowing them to be untrue; that plaintiffs relied on these statements in the PPMs; and that the undisclosed operating deficits ultimately made plaintiffs' securities worthless.

Defendants first argue that only 16 of the 44 PPMs state that present rents are sufficient to meet current normal operating expenses and debt service, and thus the claims concerning the remaining 28 properties must be dismissed. Upon examining all 44 PPMs, it is clear that indeed only 16 of the 44 PPMs contain the statement alleged in the Complaint.[1] We first address the group of 28 PPMs that do not contain the alleged misstatement.

### A. 28 PPMs Not Containing Statement Alleged in Complaint

Of the 28 PPMs that do not state that present rents are sufficient to cover normal operating expenses and debt service, seven of them state the exact opposite: that present rents are *insufficient* to meet operating expenses and debt service.[2] Summary judgment is granted in favor of defendants on the claims concerning these properties because the factual predicate for plaintiffs' allegations is simply incorrect.

■ Three other PPMs contain *no* statement concerning the sufficiency of present rents to cover operating expenses or debt service.[3] These claims are likewise dismissed because they do not contain the statement alleged in the Complaint. Plaintiffs argue that these PPMs were misleading because they did not reveal that the properties were experiencing operating deficits. However, not only have plaintiffs failed to produce any specific evidence supporting their argument that there were in fact operating deficits for these properties, but the Complaint does not allege that there was a material *omission* in these PPMs. As explained in our prior opinion, to support a claim of fraud by omission, Rule 9(b), Fed.R.Civ.P., requires that the complaint allege (1) what omissions they were, (2) the person responsible for the failure to disclose, (3) the context of the omissions and the manner in which they misled the plaintiffs, and (4) what defendant obtained through the fraud. *Adler v. Berg Harmon Assoc.*, 816 F.Supp. 919, 924 (S.D.N.Y.1993) (citing *Gould v. Berk & Michaels*, 1991 WL 152613, *3 (S.D.N.Y.1991)). The instant Complaint fails to meet the first and primary requirement, and thus summary judgment is granted on these claims. *See Whalen v. Carter*, 954 F.2d 1087 (5th Cir. 1992) (failure to plead securities fraud claim with requisite particularity constitutes failure to raise genuine issue of material fact, warranting summary judgment).

■ The final 18 of these 28 PPMs state that current rents and cash flow are sufficient to cover operating expenses, but do not state whether they are sufficient to cover debt service.[4] Plaintiffs do not present any

1. The Complaint alleges the following: "Defendants represented in each Memorandum (typically under the section entitled 'OPERATING RISKS') that for each property 'present rents are sufficient to pay [the Property's] current normal operating expenses and to meet the monthly debt service incurred in connection with the Partnership's acquisition of the Property,' or words to that effect. In fact, that representation was in all cases false, and intended to mislead investors into believing the properties were financially self-sufficient. In every case, the present rents were insufficient to pay operating expenses and meet the debt service incurred in connection with the Partnership's acquisition...." Compl. ¶ 11(a).

2. These properties are: Ashley Lakes, The Breakers, Coachman's Crossing, Lansdowne East, Pine

Hollow II, Valley View, and Vogue. All of the PPMs for these properties state: "Present rents from the property are insufficient to pay its current normal operating expenses and to meet the monthly debt service in connection with the partnership's acquisition of the property."

3. These properties are: Cumberland Apartments, Largo Properties, and Treetop Apartments.

4. These properties are: DeSoto Village, India Palms Association, Jacksonville Lakewood, Kentwood Apartments, Lake Camelot, Lakeside Village Realty, Landings, Malibu, Manchester Village, Paradise Club, Phoenix–Rivercrest, Pine Lake Apartments, Prince Manor, Ridgemont, Tampa Mirada, Waterfall Village, Williamsburg, and Woodlake Apartments. With the exception

evidence showing that this statement was false or misleading. Rather, they now argue, for the first time, that the failure to disclose that present rents were not sufficient to cover debt service constituted a material omission. We reject this dubious argument because again, the Complaint does not allege any material omission.[5]

### B. 16 PPMs Containing Statement Alleged in Complaint

With regard to the remaining 16 PPMs which do in fact state that present rents are sufficient to meet current normal operating expenses and debt service,[6] defendants argue that these statements were not materially false or misleading because, in fact, there were no operating deficits. Defendants made this same argument in their previous motion to dismiss. We denied that motion because defendants' calculations were based on figures appearing in the "Projections" portion of the PPMs rather than actual financial data, and because defendants only presented calculations for three properties. As we explained:

> [T]he PPMs represented that the *present* rents were sufficient to cover operation costs and first mortgage debt service, while defendants' argument is based to a large degree on predictions of future rents. Defendants present no evidence that these figures represent the actual rents and expenses at the times the statements were made, and the fact that these figures appear in the "Projections" portion of the PPMs suggests that they are not actual financial data.

*Adler v. Berg Harmon Assoc.,* 816 F.Supp. 919, 923 (S.D.N.Y.1993). Defendants have now come forward with the requisite financial documents for 13 of the remaining 16 properties.

Specifically, defendants have submitted an affidavit by Marilyn Benecke, who was in charge of the accounting department at Defendant Berg Harmon Associates ("BHA") from 1982 to 1991, and is presently the custodian of documents at BHA. Attached to her affidavit are actual financial statements showing rents and operating expenses for 13 of the 16 properties; that is, for all properties except Alsab Farm, Fairway Oaks, and Tree Lake Associates, which will be discussed hereinafter. In all cases these financial data show rental revenues and operating expenses just prior to or at about the time of the offering to the investors and the distribution of the PPMs; in some cases it was produced by the seller of the properties, and in others by BHA's affiliated management company. Based on these documents and the specifications of the PPMs,[7] Ms. Benecke

---

of Jacksonville Lakewood, all of the PPMs for these properties contain the following statement: "Although *present rentals and cash flow of the property are sufficient to pay its current normal operating expenses,* future rentals and cash flow are based on estimates, and rentals obtainable in the future may not be sufficient to cover recurring expenses such as maintenance expenses, debt service and real estate taxes." The PPM for Jacksonville Lakewood states that "[p]resent rentals and cash flow of the property are sufficient to pay normal operating expenses and real estate taxes but not sufficient to pay the debt service on the property through 1985."

5. Plaintiffs have had ample time to read through every PPM and make the appropriate allegations in the Complaint. This case has been pending since 1989, and plaintiffs have amended their Complaint three times.

6. Eleven of these PPMs contain the following statement: "Present rents from the property are sufficient to pay its current normal operating expenses and to meet the monthly debt service incurred in connection with the partnership's acquisition of the property." (Country Club, Fairway Oaks, Friendly Hills, Horizon Realty Group, Jockey Club, Mountain Lake, Oak Tree Villa, Pine Brook, Pine Hollow, Tree Lake, Village Apts.). Three PPMs contain a slightly varied statement: "Present rents from the property, *when added to the rents expected from the Master Lease,* are sufficient to pay its current normal operating expenses and to meet the debt service incurred in connection with the partnership's acquisition of the property." (Nassau Square, Oakbrooke, and Sandalfoot Square). And the final two PPMs state: "Present rentals *and cash flow* of the property are sufficient to pay its current normal operating expenses and to meet debt service on the first mortgage." (Alsab Farm and Lorraine Apts.).

7. In some instances the financial documents list expenses other than those to be included as "operating expenses" as directed by the PPMs. That is, the PPMs themselves specify the items of expenses to be included as "operating expenses," which generally consist of utilities, insurance, management fees, real estate taxes, maintenance

calculated the rental income, operating expenses, and debt service for each of the 13 properties.[8] Her computations reveal surpluses for each property; that is, rental income was, in fact, sufficient to pay current normal operating expenses of each property and to meet the specified debt service obligations.[9] Thus, defendants argue, there is no genuine issue of fact and summary judgment must be granted as to these 13 properties.

Plaintiffs respond to Ms. Benecke's analysis of the financial data by submitting an affidavit by Norton N. Gold, an attorney and accountant engaged by plaintiffs as an expert witness. Mr. Gold also makes computations of the rental revenues, operating expenses, and debt service for 12 of these 13 properties;[10] his calculations reveal operating deficits for all but two of the properties. Plaintiffs argue that because Mr. Gold's calculations differ from Ms. Benecke's calculations, there is an issue of fact for trial and summary judgment must be denied. We disagree that Mr. Gold's calculations constitute evidence sufficient to raise a *genuine* issue for trial.

First, Mr. Gold's calculations for two properties reveal surpluses (Lorraine Apts. and Village Apts.). Obviously plaintiffs' claims concerning these properties must be dismissed. Similarly, plaintiffs' claims concerning Nassau Square are dismissed because

Mr. Gold did not submit any calculations for this property.

With regard to the remaining 10 properties, while Ms. Benecke's calculations are based on actual operating statements, the validity of which is not challenged by plaintiffs, Mr. Gold ignores these financial data and instead bases his computations on an array of documents such as on-site inspection reports and the PPMs themselves. That is, Mr. Gold's computations involve a selection of figures favorable to plaintiffs' position taken from the "Projections" listed in the PPMs and the "Projections" listed in on-site inspection reports. Based on an incoherent and nonuniform combination of these numbers, Mr. Gold concludes that these properties have operating deficits.

But as we already explained in our prior opinion—and in fact, specifically directed—any judgment in the instant case must be based on actual financial data rather than "Projections" from the PPMs. The issue here is not whether certain predictions of future rents were false, nor whether these projections indicated operating deficits. The issue is whether, as alleged in the Complaint, *present* rents, i.e., actual rents at the time the PPMs were distributed, were *in fact* sufficient to cover operating expenses and debt service. Calculations based on projections are simply irrelevant.[11]

---

(and payroll if not included in maintenance) and general and administrative costs. The PPMs also specify that items such as repairs, interest on mortgages, depreciation, and fees to the General Counsel are not included as operating expenses because these were to be paid out of the proceeds of the offering and reserves therein. In addition, some PPMs stated that present rents were sufficient to cover costs only when the rents were combined with cash flow or rents from the Master Lease. *See supra* note 6. Ms. Benecke correctly followed the directive of each PPM for her calculations, as the issue here is whether the PPMs were misleading.

8. Contemporaneous financial statements, other than rent rolls, were not available for 3 of the properties: Nassau Square Associates, Oakbrooke Associates, and Sandalfoot Square Associates. This is because these were newly constructed shopping centers. Ms. Benecke based her computations for these properties on rent rolls and expenses contained in the appraisal reports for the shopping centers. In addition,

the seller of each shopping center guaranteed to the partnership a specified level of rental income in excess of the rental income generated at the time of sale.

9. Ms. Benecke's computations for Nassau Square reveal a deficit of $5,813.00. However, this deficit is more than offset by the expense of repairs, which under the directive of the PPM, was to be paid out of reserves established from the proceeds of the offering. Thus if one does not include the repair expenses as an "operating expense," there is a surplus. Plaintiffs fail to present *any* evidence showing a material deficit, i.e., Mr. Gold's affidavit does not include any calculations for Nassau Square.

10. Mr. Gold did not submit any calculations for Nassau Square.

11. Mr. Gold's conclusory statements that the PPMs were misleading and that the misstatements were material are disregarded. *See First*

In sum, defendants have produced operating statements showing surpluses for 13 properties at the time the statements in the PPMs were issued. Plaintiffs have failed to come forward with any facts to show that these operating statements are incorrect. Rather, plaintiffs base their entire opposition to the instant motion on various "Projections" from PPMs and on-site inspection reports. Because these projections are irrelevant to the issue at hand, plaintiffs have failed to present specific facts showing a genuine issue of fact for trial. Summary judgment is therefore granted in favor of defendants on the claims concerning these 13 properties.

This leaves three properties remaining: Alsab Farm, Fairway Oaks, and Tree Lake Associates. Moving defendants do not offer computations for these properties because Ms. Benecke was unable to find any contemporaneous financial data or seller's statements sufficient to make such calculations. Rather, they argue that there is no evidence in the record to support plaintiffs' claims. We agree.

■■■■ When considering summary judgment, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Hence even where the moving party submits no affidavits or other evidence, but simply points to the lack of evidence in the record, summary judgment is to be granted when the nonmoving party fails to make a showing sufficient to establish the existence of an essential element of its case on which it bears the burden of proof. *Id.* at 323–24, 106 S.Ct. at 2552–53; *Boyles v. American Cyanamid Co.,* 796 F.Supp. 704, 709 (E.D.N.Y.1992). The instant plaintiffs bear the burden of proving that the statements in the PPMs for these three properties were false, i.e., that operating deficits existed at the time the PPMs were issued. As already explained, Mr. Gold's calculations,

*Commodity Traders v. Heinold Commodities,* 766 F.2d 1007, 1011 (7th Cir.1985) ("Conclusory statements in affidavits opposing a motion for

which are based on projections rather than actual operating results, do not constitute a sufficient showing of a genuine issue for trial. Hence summary judgment is granted in favor of defendants on the claims concerning these three properties as well.

### CONCLUSION

For the foregoing reasons, summary judgment is granted in favor of defendants on the only remaining securities law claim. Because this claim was the only remaining predicate act for plaintiffs' RICO claims, the RICO claims are also dismissed. Defendant's request for Rule 11 sanctions is denied.

**SO ORDERED.**

summary judgment are not sufficient to raise a genuine issue of material fact.").